## Mary M. Jourdan et al. *v.* Silas L. Dean et al., Appellants.

175　599
175　618
175　599
s 199　637
199　638
175　　599
f 20 SC ²469

*Trusts and trustees—Separate use trust—Married woman—Estoppel.*

A married woman may direct that the share of an estate left to her by a relative may be invested in real estate in trust for her sole and separate use.

*Trusts and trustees—Separate use trust—Estoppel.*

Where a married woman enjoying a separate use trust in lands joins with her husband in executing deeds for the lands, and after the death of her husband accepts payment of a portion of the purchase money, she is estopped from asserting title as against the grantees in the deeds from herself and husband, and such acceptance works a ratification and redelivery of the deed.

The administrator of an estate bought a tract of land, taking title in his own name, with the share of A, a married woman, who was one of the distributees. Subsequently he executed a declaration that he held the land in trust for the sole and separate use of A, and that he would upon the request of A or her heirs convey the land to her or to her heirs, or to such other person or persons as she might direct. The declaration of trust was recorded and at the same time and place an acceptance of the trust, apparently as part of the same instrument, was recorded. The acceptance was acknowledged as if A were a single woman. Subsequently the administrator executed a deed to A for the land "in fee simple, to hold to her sole and separate use," and she and her husband executed and delivered a fee simple deed for the land to B for a valid consideration, a portion of which was received by her after her husband's

death. *Held,* (1) that the papers created a valid sole and separate use trust for A; (2) that A and her husband had no power during the lifetime of the husband to convey the land in fee simple; (3) that by the acceptance of purchase money after her husband's death she was estopped from asserting her title against B.

Argued May 13, 1896. Appeal, No. 361, Jan. T., 1896, by plaintiffs, and No. 357, by defendants, from judgment of C. P. Fayette Co., September Term, 1894, No. 554, for defendants non obstante veredicto. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Ejectment for a tract of land in South Union township.

Before BARKER, P. J., of the 47th judicial district, specially presiding : See Miller v. Thompson, infra, p. 618.

The facts appear by the following opinion of the court:

The case first stated above (the case in hand) was tried before a jury October 2, 1895, and there being no material questions of fact in dispute, the jury was directed to render a verdict in favor of the plaintiffs, subject to the questions of law reserved in answers to the points submitted by defendants' counsel.

The second case stated as above (Miller v. Thompson, infra, p. 618) was on the list for trial at the same term, but the facts in each case being substantially the same, and the questions of law involved identical, this case was submitted to the court in the form of a case stated, and inasmuch as we have made the same disposition of both cases, we deem it unnecessary to file separate opinions, but embody our reasons in one opinion which is made applicable to both cases.

Mrs. Ann Miller was a niece and heir at law of Dr. Corbin Amos, of Baltimore ; James Logue, the administrator of his estate, purchased, with a part of her distributive share therein, thirteen acres and fifteen perches of land in South Union township, Fayette county, Pennsylvania, from Isaac Williams, on December 13, 1866, taking a deed to himself in fee simple, which deed was recorded December 15, 1866. On December 18, 1866, James Logue executed, in Baltimore, a declaration of trust, reciting the Williams conveyance to him and concluding as follows :

"Now know all men by these presents that I the said James Logue, do hereby declare that I hold the above described piece or parcel of land in trust *for the sole and separate use* of Ann Miller of Uniontown, Fayette county, Pennsylvania, her heirs or assigns, the same to be occupied, used and enjoyed by her, her heirs or assigns, without let or hindrance from me, my heirs or assigns, or any person claiming or to claim the same under me or them, and I further declare that I will at any time upon the request in writing of the said Ann Miller or her heirs, duly authenticated by good and sufficient deed or deeds of conveyance, convey the said piece or parcel of land with the appurtenances to the said Ann Miller or her heirs, or to such other person or persons as she or they may direct."

The above instrument was recorded December 24, 1866, and at the same time and place is recorded, apparently as part of the same instrument, the following:

"Know all men by these presents that I accept the foregoing deed of trust on the terms and conditions therein named. As witness my hand and seal this 24th day of December 1866.

"ANN MILLER."

"Attest: T. A. HALDEMAN."

"Fayette County, *ss:*

"Before me, a justice of the peace in and for said county, came Ann Miller and acknowledged the foregoing declaration and acceptance to be her act and deed and desired that the same might be recorded as such. As witness my hand and seal this 24th day of December, 1866.

"T. A. HALDEMAN.    [SEAL]

On August 24, 1869, James Logue executed a deed to Ann Miller, reciting the Williams conveyance to him and the declaration of trust with its terms, and containing the following: "And whereas, the said Ann Miller by her writing, duly acknowledged, has requested the said James Logue to convey said piece or parcel of land to her, in fee simple, *to hold to her sole and separate use.* Now therefore this indenture witnesseth, That the said James Logue for and (in) consideration of the premises and of the sum of one dollar to him in hand paid

by the said Ann Miller at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted," etc., then follows a description of the land, and in the habendum clause it is stated that the same is granted to the said Ann Miller, her heirs and assigns, " to and for the sole and separate use and behoof of the said Ann Miller, and to her heirs and assigns forever." This deed was recorded August 24, 1869, the day of its execution.

On October 21, 1889, Ann Miller and her husband conveyed to John Nicolls the Connellsville vein of coal underlying the land conveyed to her as aforesaid, the deed to him reciting the deed from Williams to Logue, the declaration of trust with its full terms, also that Ann Miller, by her writing duly acknowledged, had requested the said James Logue to convey the said land to her in fee simple, to hold to her sole and separate use, and also reciting the deed from Logue to her.

On January 21, 1891, Ann Miller and her husband executed a deed to James A. Laughead for four acres and one hundred and twelve perches of land, being part of the real estate conveyed in the foregoing instruments. The only recital of previous title in that deed being a reference to the deed of Logue to Mrs. Miller, dated August 24, 1869, and its place of record.

James A. Laughead conveyed an undivided three fourths interest in said land to Dean, Modisette and Albert Laughead, the other defendants in one of these actions. Thomas Miller, the husband of Ann Miller, died May 25, 1891, and Ann Miller died January 4, 1893.

(The facts on which the defendants rely in both of these cases as a ratification of the deeds to Laughead and Nicolls will be found elsewhere in this opinion, where that branch of the case is discussed.)

The plaintiffs are two of the six heirs at law of Ann Miller, and they claim in that right; the defendants, in one case, No. 554 Sept. term, 1894, claim under the Laughead deed, and, in the other, No. 61 June term, 1895, under the Nicolls deed.

It cannot be questioned that on the face of the papers recited above, by virtue of which plaintiffs' intestate had title, they created a sole and separate use trust in Ann Miller under the rule established in Lancaster v. Dolan, 1 Rawle, 231, and maintained by a long line of authorities extending down to the pres-

ent time.   This rule has remained unquestioned, except in Haines v. Ellis, 24 Pa. 253, which case was overruled by the Supreme Court in Wright v. Brown, 44 Pa. 224.

The words used in the papers in evidence in this case are apt and appropriate words and create a sole and separate use trust, and it is unnecessary to refer to particular cases as authority for this assertion.   The reasons for establishing sole and separate use trusts, and for so construing apt words as to sustain them, are given at length by the late Justice CLARK in Mac-Connell v. Lindsay, 131 Pa. on pages 484 to 491, inclusive.

It follows then that if the sole and separate use trust, created by the papers in evidence, was legally constituted, Ann Miller had no power to make the deeds to Laughead and Nicolls, and they were absolutely void and the defendants took no title there-under.   The authorities on this point are also numerous and conclusive.   The defendants, however, contend that the circumstances attending the transaction between James Logue and Ann Miller were such that a sole and separate use trust was not legally created, and the papers in the case on their face establishing such a trust, the burden is on them to avoid it, and we will now refer to the reasons assigned and authorities relied on by them.

The defendants claim, first, that when James Logue purchased this property with Ann Miller's money and took the deed in his own name, without any mention therein of a sole and separate use trust for her, an equitable estate in fee simple vested in Ann Miller, which could not be divested or changed except by deed or other instrument duly executed by her and her husband.

There is no evidence in the case as to whether the administrator invested Ann Miller's money in this land of his own volition or by her direction and with her consent therefor, when five days afterwards he declared that he held it (the land) in trust for her sole and separate use " to be occupied, used and enjoyed by her, her heirs and assigns," and agreed upon her request or her heirs to convey the same to her or her heirs, or to such other person or persons as she or they might direct, " by good and sufficient deed or deeds of conveyance," without any reference to the fact that it had been bought with her money; the fact that it had been so bought did not in the least affect

the trust declared by apt words in the declaration of trust.   It was a sole and separate use trust, subject to her right to demand a deed to herself or any other person in fee simple, as we understand it, and until such deed had been obtained, she could not convey, and her rights to the money due from Logue, as administrator of Corbin Amos, remained unaffected in the meantime —in other words, she had no estate or interest in the land until the declaration of trust was executed and delivered, and then she only acquired an equitable interest, without power of alienation, except as provided therein, and so far as anything appears on the face of the papers, her rights in the money in the hands of the administrator remained intact.   She could have elected to take this money, or take the land in fee simple, or for her sole and separate use as set forth in the declaration of trust, and as she did take it.   She was not bound to accept the terms in the deed and it may be that equity would have reformed it for her, or that, had she elected to do so, she could have compelled Logue to convey to her a title in fee simple without terms.   It is sufficient for the purposes of this case, however, that we find the title in her when she attempted to convey it burdened with a sole and separate use trust.

The case of Warren v. Steer, 112 Pa. 634, so much relied upon by defendants' counsel, is inapplicable as ruling that the intention of the parties at the time is the essential element, because we do not know Mrs. Miller in this transaction at the time of the purchase, she only appearing when the declaration of trust was executed, and her interest is fixed by that paper when accepted.   She could not be affected by a purchase of land with her money at the time of purchase unless she consented then, of which we have no evidence.

In the case just referred to, Warren paid for the property and took the deed in his sister's name, and it was held that his intention at the time as to whether she was to hold in trust for him or have a title in fee simple herself, must govern.

Lynch v. Cox, 23 Pa. 269; Nixon's Appeal, 63 Pa. 279; Mc-Laughlin v. Fulton, 104 Pa. 161, are equally inapplicable, as they are cases of persons asserting trusts when it was only necessary to show that the land was bought with the money of the cestuis que trustent.   Mrs. Miller did not assert this and demand a deed in fee simple as she could have done, she accepted the

land for her sole and separate use, and that her husband had full knowledge is evidenced by the recitals in the deeds executed by him.

The case of McMullin v. Beatty, 56 Pa. 389, is, to our mind, in some of its features particularly applicable to the branch of this case now under consideration. Campbell, as the guardian of Mrs. McCormick, had in his hands money for her, and she and her husband executed a trust deed to him to secure the same " to the sole and separate use and benefit of said Elizabeth and her legal representatives," the deed providing that the principal or any portion thereof should be paid over to her or upon her order or that of her legal representatives for her sole and separate use, at any time, upon six months' notice. One year afterwards, Campbell invested the money in real estate, the deed reciting that the purchase money was paid with money held by Campbell as trustee for the sole and separate use of Elizabeth McCormick, and that the land was to be held for her sole and separate use. Elizabeth McCormick authorized this investment by a paper signed by herself and not by her husband. Four years afterwards, Mrs. McCormick and her husband conveyed the land to Noble McCormick by deed reciting the former deeds and the terms of the trust, the title passed through several hands and after the death of Elizabeth McCormick and her husband, in an action of ejectment in which one of the parties· claimed under this deed, it was held that the deed was void and without effect. Justice STRONG, in delivering the opinion of the Supreme Court in this case, said: " For all the purposes of this case it is useless to inquire whether Dr. Campbell had any right to apply the money which he held for the sole and separate use of Mrs. McCormick to the purchase of the land in controversy. He made the purchase, and on the 17th day of April, 1844, took a deed for it to himself in trust for her sole and separate use during her natural life, and then for her lawful heirs, their heirs and assigns. . . . What matters it in this controversy by whom the consideration for the deed to Dr. Campbell was paid? Let it be that he had no power to apply in payment the money which he had under ·another and prior trust. Let it be that he could not convert Mrs. McCormick's interest under the first trust into land, and could not, even on her order, settle any part of it to different uses from those which were at first declared.

What then? Nothing more than that the purchase which he made of the land was made with his own money. That does not change or destroy the trust declared by the deed, though it would leave the original trust of the personalty intact. Mrs. McCormick then acquired an equitable estate held for her separate use during life, with remainder as stated, and without any power of alienation."

If we paraphrase the language thus used to make it applicable to the case in hand, it seems to us to dispose of the proposition that Mrs. Miller acquired an equitable estate at the time Logue purchased from Williams, which he could not convert or change, except in the form prescribed in the act of 1770.

The defendants further contend that Ann Miller could not allow her personal estate (money due from Corbin Amos's administrator) to be converted into real estate for her sole and separate use without the consent of her husband, and further that the sole and separate use trust was not legally created in this case, because her consent and that of her husband is not evidenced in the manner required for deeds and mortgages conveying the separate estate of a married woman. In support of the first part of this proposition, defendants' counsel rely mainly on the case of Johnson v. Fritz, 44 Pa. 449. In that case, Maria Fritz was entitled to certain moneys under her mother's will which contained the following: "It is my will that all I have bequeathed to my daughters shall be for the whole sole exclusive use and benefit of my aforesaid daughters, and not for the use of their husbands, and each of their receipts shall be a sufficient discharge to my executor." The executor invested the money of Mrs. Fritz in land, and it was stipulated in the deed "that this land should be held by her for her sole and separate use and benefit, free and discharged from any tenancy by the curtesy," etc. Mrs. Fritz conveyed the land to her son in the lifetime of her husband who did not join in the deed; after her death he brought ejectment to enforce his rights as tenant by the curtesy, and it was held that her conveyance, without his joining in the deed, was void at law as against him as he was entitled to his curtesy on her death, notwithstanding it was her sole and separate estate. Justice LOWRIE, delivering the opinion of the Supreme Court says: "It was originally money that was bequeathed to her, and when she converted it into land she

could impose no terms upon her title to the land different from those attached to the money.    That was merely for her separate use, and all other limitations of her title contained in the deed are without authority."    Doubtless referring to the " limitation " depriving him of his rights as tenant by the curtesy, a right created by law and of which she could not deprive him. The fact that the money bequeathed by her mother was for her sole and separate use did not deprive him of this right as tenant by the curtesy in land purchased with it, and when it was invested in land, not only to be held " for her sole and separate use and benefit " but also " free and discharged from any tenancy by the curtesy," clearly terms were imposed not only different from those attached to the money but which attempted to exclude the husband from rights guaranteed him by the law, and provided for no order of succession in lieu of that fixed by law.    The conveyance was declared void in the court below, because no order of succession in lieu of that fixed by law was established, and doubtless Justice LOWRIE had this fact in mind when he said in the opinion " when she converted it into land she could impose no terms upon her title to the land different from those attached to the money."

Johnson v. Fritz, supra, is the law of that particular case and others like unto it, but it must be borne in mind that it is not the husband who is complaining in this case that a sole and separate use trust was created without his consent, but parties who bought with full notice of all the facts now before us. Miller could not complain as Fritz did, because under the title in his wife he would have been entitled to hold the land as tenant by the curtesy had he survived her.

As to the second part of the proposition above stated, it is contended by defendants that the record of the acceptance of Ann Miller recorded with the declaration of trust is inadmissible, because not acknowledged by herself and her husband in accordance with the act of 1770.    We fail to find anything in the authorities cited of sufficient force to sustain this proposition.

In Richardson v. Aiken, 104 Pa. 570, so much relied on by the counsel for defendants, the grantor was the guardian of his daughter, and he conveyed real estate to her, the conveyance showing on its face that it was in consideration of the ward's

money in his hands. Mr. Justice PAXSON, in delivering the opinion says: "Under such circumstances it was not in the power of the grantor to impose a separate use trust upon the grant, or any clog upon it whatever, without his daughter's consent. . . .

"Even if the intention had been clear, which it is not, to confine the grantor to a life estate, and bar her husband's marital rights in the property, we are of opinion it was beyond the power of the grantor. There is nothing upon the record to show Mrs. Aiken's consent to such an arrangement. On the contrary, the agreement of herself and husband to convey the land to the plaintiff in error in fee is conclusive that she declines to be bound by the restriction."

There is not only no evidence in the above case that Mrs. Aiken consented to accept the land as a sole and separate use trust in lieu of the money in the hands of her guardian, but there is no evidence that she even knew it was so settled on her, unless the statement in the deed to her would be construed as knowledge. The facts in this case are quite different. We have an acceptance in the form prescribed by the form books and in use in this state for many years. We have the deed to Mrs. Miller with its recitals as to her request that it be made in the form that was used, and her deeds to Laughead and Nicolls with their recitals. With all these papers before him, Justice PAXSON would scarcely have said in this case that the conveyances of Mrs. Miller and husband to the above named parties, in. fee, are conclusive that she declined to be bound by the restrictions in her deed.

As to the effect and significance of the deed made to Mrs. Miller by Logue, containing the sole and separate use trust, we think we can quote profitably from the opinion of Judge · SLAGLE, before whom were tried other cases under the same title involved in these cases: "The reason of the rule in Pennsylvania which deprives a feme covert either alone or with her husband from disposing of the property, is that she may be relieved from the solicitations and representations of her husband. In the original declaration of trust there was a power reserved by which Mrs. Miller could demand a conveyance to any person she might designate. She was therefore subject to the importunities of her husband, as fully as if the legal title

had been in her.  If she had intended to take the property into her own control free from any trust, the simple way to have done so would have been to demand a deed in the ordinary form.  She did not do so but required it to be made to her to hold for her sole and separate use.  She must be presumed to know the effect of such conveyance, and so far from there being anything to show that she did not know and did not intend the legal effects of the words used, it is reasonable to presume that she required the conveyance to be made as it was, in order to take away the power to dispose of the property and thus make it a separate use trust pure and simple, and thus avoid all temptation to dispose of it on her own motion or by reason of importunities of her husband or others.

" The intention must be determined by what was done at the time, and therefore it is immaterial that a number of years afterwards she made conveyances as if she held the title in fee simple free from any trust."

In determining these cases we must take into consideration all the matters appearing in the chain of title, as well as the facts connected therewith, and to our mind, it would be frittering away the very purposes of the rule established in Lancaster v. Dolan, supra, as explained there and in other cases, to hold that because Ann Miller and her husband did not join in a formal consent and acknowledge in the form required in conveying real estate that the sole and separate use trust, clearly evidenced by the papers, could not stand as against parties who must have had full knowledge of their contents.  The declaration of trust, and the acceptance recorded with it, the deed to Mrs. Miller in pursuance thereof made at her request, according to its recitals, all recorded, and the deeds made by her and her husband and their recitals, are sufficient evidence of acceptance by both her and her husband, and, in our opinion, the grantees would take nothing more than she had to give, as shown by her title papers, and they would therefore have no title to the land in controversy as against her heirs, unless the deeds made have been ratified by her, or there are such circumstances as would estop her and those claiming under her from gainsaying them.

Are there any circumstances in these cases that in equity should estop the plaintiffs from avoiding the deeds made by Ann Miller in the lifetime of her husband ?  In the case of the

parties claiming under the Laughead deed, it was claimed that there had been erected on the land after the death of Thomas Miller some valuable improvements, with the knowledge of Ann Miller, and that therefore the plaintiffs would be estopped from recovering; but the parties making the improvements, Mrs. Miller's vendees, not having been misled or induced to act by her silence, and having the same knowledge of her title as she had, under such circumstances, the elements that work an equitable estoppel because of silence and acquiescence are clearly wanting. It was also in evidence in this case by proof and admissions that when Mrs. Miller sold to Laughead, it was arranged that a considerable portion of the purchase money should be paid to her daughter, Mrs. Burchinal, that some of it was paid in the lifetime of Thomas Miller and some to Mrs. Burchinal after the death of her husband, with her knowledge, and in pursuance of the previous arrangement, and that part of the interest on the deferred payments was paid to Ann Miller directly by Laughead after the death of Thomas Miller.

In the Nicolls case it was "admitted that the said purchase money was paid in several installments, some of which were paid before the death of the said Thomas Miller her husband, to Eliza Miller, daughter of said Ann Miller, by her direction, and that two installments of $500 each, and the sum of $27.00 interest on the same, were paid after the death of Thomas Miller her said husband, to the said Eliza Miller, daughter of the said Ann Miller, by her direction, and that a part of the said purchase money was, after the death of the said Thomas Miller her husband, invested by her, the said Ann Miller, and she collected the interest on the same."

Did the acceptance of the money as recited above (and payment to her daughter by her direction would have the same effect as if paid to her) amount to a ratification of her deeds, and estop her and those claiming under her from avoiding them?

In Maple v. Kussart, 53 Pa. 352, Justice STRONG says: "It is a maxim of common honesty, as well as of law, that a party cannot have the price of land sold, and the land itself. Accordingly, it has been ruled uniformly, that if one receive the purchase money of land sold he affirms the sale, and he cannot claim against it whether it was void or only voidable:" citing

Adlum v. Yard, 1 Rawle, 163; Wilson v. Bigger, 7 W. & S. 127; Crowell v. Meconkey, 5 Pa. 168; Stroble v. Smith, 8 Watts, 280; Smith v. Warden, 19 Pa. 424; Commonwealth v. Shuman's Administrator, 18 Pa. 346; Johnson v. Fritz, 44 Pa. 449; Spragg v. Shriver, 25 Pa. 282.

The application of the principle announced above to the case in hand is not prevented by the cases of Richards v. McClelland, 29 Pa. 385; Keen v. Coleman, 39 Pa. 299; Rumfelt v. Clemmens, 46 Pa. 455; Glidden v. Strupler, 52 Pa. 401; Williams v. Baker, 71 Pa. 476; Buchanan v. Hazzard, 95 Pa. 240; Stivers v. Tucker et al., 126 Pa. 74, which are relied on by plaintiff's counsel and have been carefully examined by us.

These cases and the many kindred ones in this state ought to be sufficient to prevent any further attempt to defeat the interest of married women in real estate by any acts or declarations of themselves short of the mode pointed out by statute. They are authority for the rule that "a married woman's deed is absolutely void, and she cannot be estopped by any subsequent act of ratification short of a new deed subsequently acknowledged in the form required by statute;" and, as stated in Glidden v. Strupler, supra, "the contract to convey being absolutely void, because of the incapacity, its ratification is equally forbidden, unless by deed in the mode prescribed by the statute." But it must be observed that all the cases mentioned above have reference to acts done while coverture remained, and the principles announced in all of them as general propositions, that contracts void under the disability of coverture cannot be validated by estoppel, refer to the facts of the particular cases wherein the acts relied upon were during coverture, and therefore do not apply to a woman sui juris by reason of discoverture. This brings us to the consideration of the cases where a ratification has been claimed of deeds, etc., void because of coverture by acts done after removal of disability.

In Jourdan v. Jourdan, 9 S. & R. 268, the deed was void because the acknowledgment did not show the separate examination of the wife. It was held, under the authority of Carter v. Strapham, Cowp. 201, that it might be made good by delivery of the same deed after the death of the husband. (See also Conklin v. Bush, 8 Pa. middle of page 517.)

In Share v. Anderson, 7 S. &. R. 43, where a deed signed by

a married woman was void because not properly executed, after the death of her husband she brought suit for the purchase money, and it was held that she had made her election and would be forever barred from claiming her dower. Justice GIBSON, in delivering the opinion in that case says : " Her having joined in a suit to recover the price of a title, which was sold as a good one, was a determination of her election which shall forever estop her from disputing the validity of the title, to which, after every legal disability was removed, she has thus become a party. The error in the charge of the court respecting the acknowledgment of the deed, therefore, was one that did not prejudice the defendants, as the vendor's widow, who is an executrix of his will and one of the plaintiffs in the suit, ratified the sale, and cured the defect in the title."

In Brown v. Bennett, 75 Pa. 420, Justice SHARSWOOD, in delivering the opinion, says : " That a married woman has no capacity to contract for the sale of her real estate, or to convey it, except in the precise statutory mode conferring the power, is one of the best settled doctrines of our law. See the cases cited in the opinion of the present Chief Justice in Glidden v. Strupler, 52 Pa. 402. It was held in that case that she could not be affected either by legal or equitable estoppel, so as to preclude her heirs from setting up and recovering upon her title. But it was not decided in that case, or any other, that she could not ratify the contract after the coverture has ceased, and she has thereby become perfectly sui juris.

" It is contended that the contract being absolutely void was incapable of ratification without a new contract founded upon a new consideration. It may well be that a naked ratification by the married woman after discoverture would not avail. A mere admission of her liability might not be sufficient. But there is something more in this case. She received one of the installments due upon the contract after the death of her husband. The authority of the agent is not denied, and the case stated expressly admits that she received the money. This is a consideration, and sufficient to support the promise to ratify the contract, admitting a consideration to be necessary. It was, in effect, a redelivery by her of the articles, and an acknowledgment that she had duly received the installments previously paid during the coverture. Such a redelivery of the original

agreement in writing is not a new parol contract void by the statute of frauds."

It will be observed that in the last line quoted above some emphasis is placed on the fact that the redelivery of the original agreement was in writing, referring to the receipt given by Mrs. Brown when she received the installment referred to, but in the case of Trout v. McDonald, 83 Pa. 144, there was no evidence in writing of the receipt of any money, and yet the receipt of money by Mrs Trout after the death of her husband on a lease which was void as to her was held to be a ratification and confirmation of the same, and it is very evident that it is on that ground that the case was decided, as evidenced by the following quotation from the opinion written by Justice PAXSON : "But we have the further fact expressly found by the court below, that 'subsequent to her husband's death, when a single woman, and before she notified the defendant from sinking said No. 3 shaft or mine, the plaintiff, with full knowledge that defendant had been mining by virtue of said lease, received from him about $200 royalty to apply on coal so mined.' Conceding that the appellant had the right to avoid the lease after her husband's death, here was a deliberate ratification and affirmance of it. It was not done in ignorance of her rights. She knew all about the lease, and it would only have been common justice and common honesty to have notified the appellee of her rights at the earliest moment."

Lest too much stress be laid on the quotation above as to the knowledge of Mrs. Trout, and it be argued that the act relied on as a ratification must be done with the knowledge of the existing objection, we call attention to the fact that there is no more evidence in that case than in Brown v. Bennett, or in these cases for that matter, that the party claimed to be estopped had knowledge of the effect of her act, and yet it was held to be a ratification in that case and we think must be so held in these.

The cases last cited above have never been overruled, on the contrary they are frequently favorably referred to, and we are constrained to say that because of their close application to the cases in hand they are binding on us.

It is scarcely necessary to cite authorities to the effect that, if the receipt of purchase money after the death of her husband

worked a ratification as to Ann Miller, it would estop the plain-tiffs, who claim under her by descent, from recovering in these actions.

We conclude then as to the questions of law involved in the above stated cases :·

1. That a sole and separate use trust was legally constituted in Ann Miller to the land in controversy, and that no title became vested in the grantees in any of the deeds executed by her and her husband, in his lifetime, for any part of said land by virtue of said deeds.

2. That the receipt of purchase money from the grantees in the deeds made by Ann Miller, during the lifetime of her hus-band, by herself and by others under her direction, worked a ratification and redelivery of said deeds, and thereby estopped her heirs from claiming any portion of the land in controversy.

The reasons given in above opinion for our conclusions, and the formal statement of our conclusions, furnish a sufficient basis for a review of these cases, and make it unnecessary for us to file specific answers to the defendants' points.

*Error assigned* by plaintiffs was in entering judgment for defendants non obstante verdicto.

*Errors assigned* by defendants were (1) in stating in the opinion " that a sole and separate use trust was legally consti-tuted in Ann Miller to the land in controversy, and that no title became vested in the grantees in any of the deeds executed by her and her husband, in his lifetime, for any part of said land, by virtue of said deeds ; " (2) in overruling the defend-ants' fifth point, which was as follows, viz : If the jury believe from the evidence that Ann Miller had an estate in said land for her separate use, and that while a feme covert she and her husband made a deed for said land to James A. Laughead, who entered into possession of the same, and that after her hus-band's death said Ann Miller stood by and saw said Laughead, or his successors in title, put valuable improvements on said land, and not only kept silent about her title, but actually en-couraged the making of these improvements, then her heirs would be estopped from disputing defendants' title.

*Edward Campbell, R. F. Hoopwood* with him, for Mary M.

Jourdan et al.—The appellants contend that the title did not leave their mother during her life, because the statute of frauds prevents a title from passing by reason of anything appearing in these cases: Pargeter v. Harris, 7 Q. B. 708; Wheelock v. Henshaw, 19 Pick. 341; 2 Herman on Est. 722, sec. 588.

Where one conveys with warranty land to which he has no title, and the grantor afterwards acquires title, his vendee shall have the land. This is by way of estoppel, and simply to avoid the circuity of an action on the warranty: Shaw v. Galbraith, 7 Pa. 113; Brown v. McCormick, 6 Watts, 60; Root v. Crock, 7 Pa. 378; McWilliams v. Nisly, 2 S. & R. 507; Washabaugh v. Entriken, 34 Pa. 74; Tyson v. Passmore, 2 Pa. 122; Clark v. Martin, 49 Pa. 299; Skinner v. Starner, 24 Pa. 123; Miranville v. Silverthorn, 48 Pa. 147; Bigelow on Estoppel, 390.

The present contention of the appellees is directly inconsistent with the consideration expressed in the deeds, it is set up by one of the parties in the deeds, against the other. This cannot be done: Buckley's App., 48 Pa. 491; Taylor v. Preston, 79 Pa. 436; Mitchell on Conveyancing, 424.

Payment of purchase money, without possession delivered at the time of payment, makes no title to land: Overmeyer v. Koerner, 81* Pa. 517; Ballard v. Ward, 89 Pa. 358; Anderson v. Brinser, 129 Pa. 376; Miller v. Zufall, 113 Pa. 317.

The continuation of a former possession, which is the most than can be contended for in these cases, is not sufficient: Birkbeck v. Kelly, 19 W. N. C. 422.

It is well settled that such delivery as may be between tenants in common has no effect in establishing a parol sale of lands: Spencer & Newbold's App., 80 Pa. 317; Ackerman v. Fisher, 57 Pa. 457; Toe v. Toe, 3 Grant, 74; Erie & Wy. R. v. Knowles, 117 Pa. 77.

Mrs. Ann Miller asserted no falsehood, and concealed nothing from either Nicolls or Laughead. She is therefore clear of any estoppel on that score: Miller v. Miller, 60 Pa. 16; Maple v. Kussart, 53 Pa. 348.

Payment by Nicolls and Laughead of the purchase money under all these facts, prevents them from setting up an equitable or any other estoppel against Ann Miller or her heirs. They paid their money with their eyes open, for whatever they received, and if they received nothing they cannot now demand

anything: Patterson v. Lytle, 11 Pa. 53; Musser v. Oliver, 21 Pa. 362; Troxell v. Lehigh C. I. Co., 42 Pa. 513; Ayres v. Wattson, 57 Pa. 360; 2 Herman on Estoppel, 1087; Dorrance v. Scott, 3 Wh. 313; Mitchell on Conveyancing, 478; 1 Devlin on Deeds, 67; Leggate v. Clark, 111 Mass. 308: Curtin v. Patton, 11 S. & R. 305; Rogers v. Walker, 6 Pa. 371; Beals v. See, 10 Pa. 56; Blight v. Schenck, 10 Pa. 285; Pa. Co. v. Dovey, 64 Pa. 260.

*Daniel Sturgeon* and *D. M. Hertzog*, for Silas M. Dean et al. —At common law a married woman had no power to contract: Bond v. Bunting, 78 Pa. 215.

The act of 1848 did not confer upon her any power or capacity which she did not possess before, except that of making a will and of binding her estate by a contract for necessaries: Moore v. Cornell, 68 Pa. 320; Pettit v. Fretz, 33 Pa. 118; Glyde v. Keister, 32 Pa. 85; Quick v. Miller, 103 Pa. 71; Buchanan v. Buchanan 46 Pa. 186; Dampf's App., 97 Pa. 377; Hinkle v. Landis, 131 Pa. 573.

The act of April 11, 1856, did not give her power to make a contract limiting her interest to a separate use trust: Buchanan v. Buchanan, 46 Pa. 186; Dampf's App., 97 Pa. 377.

The interest of a married woman in real estate cannot be divested except in the mode pointed out by our statute: Stivers v. Tucker, 126 Pa. 76.

One who encourages another to purchase land and spend money on it cannot set up a better title in himself to defeat the purchaser: Maple v. Kussart, 53 Pa. 348; Chapman v. Chapman, 59 Pa. 214.

If one receive the purchase money of land sold, he affirms the sale, and he cannot claim against it whether it was void or only voidable: Maple v. Kussart, 53 Pa. 352.

The void deed of a married woman can be made good by redelivery after coverture: Jourdan v. Jourdan, 9 S. & R. 268; Share v. Anderson, 7 S. & R. 43; Brown v. Bennett, 75 Pa. 420; Trout v. McDonald, 83 Pa. 144.

PER CURIAM, in No. 361, May 25, 1896:

There was no controversy as to the controlling facts in this case. They are substantially the same as those embodied in the

case stated that was heard and disposed of in the court below at the same time,—so far, at least, as the questions of law involved are concerned.   Both cases were also argued together here.

In his opinion, disposing of the questions of law involved in both cases, and directing judgment for the defendants in this case, non obstante veredicto, the learned president of the forty-seventh judicial district, who specially presided at the trial, summarized his legal conclusions thus :

" 1st. That a sole and separate use trust was legally constituted in Ann Miller to the land in controversy, and that no title became vested in the grantees in any of the deeds executed by her and her husband, in his lifetime, for any part of said land, by virtue of said deeds."

" 2d. That the receipt of purchase money, from the grantees in the deeds made by Ann Miller during the lifetime of her husband, by herself and by others under her direction, worked a ratification and redelivery of said deeds, and thereby estopped her heirs from claiming any portion of the land in controversy."

The thought, evidently in the mind of the learned judge, as to the effect of the receipt of purchase money, after the death of Mr. Miller, is not as clearly expressed in his second conclusion as he intended it should be.   It is frankly conceded by the learned counsel for plaintiffs, that he meant to say the receipt of purchase money, etc., by Ann Miller and by others under her direction, after the death of her husband, " worked a ratification," etc.

The first conclusion of law is, of course, satisfactory to the plaintiffs.   Their specifications of error are directed exclusively to the second conclusion of law, and to the entry of judgment for the defendants non obstante veredicto.   Notwithstanding the very able and ingenious argument of their learned counsel, we are not convinced that there is anything in the record to justify us in sustaining either of their specifications of error. On the contrary, we are all satisfied as to the correctness of the conclusions reached by the learned trial judge.   The questions involved have been so carefully and exhaustively considered by him that further discussion of any of them is unnecessary. The judgment is therefore affirmed on the opinion of the learned president of the forty-seventh judicial district.

PER CURIAM, in No. 357, May 25, 1896 :

This case was argued with No. 361 of January term, 1896, Jourdan et al., Appellants, v. Dean et al., in which an opinion has just been filed.

We are all of opinion that both of the learned trial judge's legal conclusions are correct, and the judgment is therefore affirmed on his opinion.